FRANKLIN LAMP MFG. CO., Inc., v. ALBE
LAMP & SHADE CO.
No. 10039.

District Court, E. D. Pennsylvania.
Feb. 24, 1939.

Henry L. Schimpf, Jr., of Philadelphia, Pa., for plaintiff.

Caesar & Rivise, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

Leave was given to file Briefs.

The case concerns Letters Patent No. 109,017. issued March 29th, 1938, to Sophie M. Janssen, for a design for a lamp shade.

Monopoly of trade is anathema, yet the aim and effort of every one in the commercial world is to establish and reap the benefits of it. Many secure it by establishing confidence in their integrity, good-will and fair dealing, and in the merit of that in which they deal. It may be thus said to be earned and deserved. They would probably disclaim any wish to establish a monopoly of the trade, but each strives to secure as large a share of it as he can. There is no thought of wrong in this but each one feels that in protecting his trade he is defending his rights and resents any encroachment upon his trade as a trespass.

Closely akin to this is what we know as a trade-name. The latter may not be the fruit of merit but may be wholly due to the arts of salesmanship and to advertising. None the less the possessor feels that he has a property right in the name acquired. Indeed he may claim it because of the large expense to which he has been put in acquiring it. These exclusive rights to a trade may be called natural rights. They are not bestowed by the law but are recognized by it. The only protection afforded by the law is in the doctrine of unfair competition. In addition to these there are rights which are wholly the creature of the law and are protected by law made remedies. These we know as trade-mark, copyright and patent rights, including design patents. These are rights to absolute monopolies and are given "to promote the progress of science and the useful arts" from progress in which the public is expected to benefit.

This case concerns itself with a Design Patent. It is wholly a creation of the law, and the rights conferred are defined by the law. The first Design Patent act was quite verbose and very specific in defining the subject of the patent granted. The present act, 35 U.S.C.A. § 73, is very general and terse, thus lending itself to easy quotation. The Patent is granted to "any person who has invented any new, original, and ornamental design for an article of manufacture". Design carries with it the idea of plan. Nothing which is made can be made without the maker having consciously or subconsciously in mind what is to be made. What he makes may, when completed, be pleasing to the eye or what we call ugly. Any one who gives to it that appearance which the act terms "ornamental" is given the right to a Design Patent. This is made by the act essential to a grant of the right. Many cases have attempted to define for us what is meant by "ornamental" without advancing much beyond the idea conveyed by the word itself. The design, it has been said, "must be one which appeals to the esthetic sense"; "to the artistic sense"; "to the sense of beauty or the beautiful", or as one poetically inclined has phrased it for us, "the design must be a thing of beauty which is a joy forever". If the quality indicated is the real test, all which can be said is that the law imposes upon the Examiners of the Patent office a real task. The difficulty is the absence of a standard.

The adage is as old as our literature "de gustibus non disputandum". The coming Easter festival will doubtless bring to us new creations of the millinery art which, if we may judge of them by what has gone before, will be far from being "things of beauty". The design of one of them may show invention, novelty and originality, but if it fails to appeal to the love of the beautiful in the beholder, should it be denied patentability? Take the creations of so called modern art. There may be, which we very much doubt, those who can see beauty in them but to the common eye they are simply grotesque and hideous. There is perhaps such a thing as "the beauty of ugliness". An under shot English bull dog is often said to be so ugly that he is beautiful. Nor can we gain help by resort to that common refuge of the judicial mind in the "general sense of mankind", for there is no more a standard of the general sense than there is of beauty. The howl of disapproval which greets the verdict of the jury in a Beauty Contest is evidence of this. The general howl might be said to be evidence of the general sense, did we not know that the howl would have been just as vigorous, whatever the verdict was. The test given us to be applied is an impossible one but none the less one must be applied. The word used in the act is ornamental. There is sometimes a distinction between the ornate and the beautiful. Ornamentation does not always impart beauty. We recognize this in architecture. Often it can be truly said the plainer the lines the greater the beauty. The real test of the patentability of a design is not beauty but ornamentation. People may differ as to its beauty but not as to the fact of its ornamentation. We can without difficulty apply this test to any design. Applying it in the present case we find the design ornamental, and in so doing find the validity of the patent in suit. Our difficulties begin however when we come to apply a test of infringement. A design in the sense we are discussing it is a picture. Any one who has watched a lightning artist at work has seen what a slight change in a line or lines will produce a startling change in a picture. A change from the up to the down curve lines in a picture will transform an amiable, happy, smiling subject into a scowling villian. The illustration was brought out at the argument at Bar, of a picture in Puck or Judge in the days when composite photographic pictures were in vogue. The picture was entitled "A composite picture of a young girl and her grandmother". Looked at from one angle the picture was that of a young girl. Looked at from a very slight difference of angle, it was the picture of an aged grandmother. How much of a difference in a design will enable one to escape the charge of infringement?

Here we do get some help from the adjudged cases. The test is not the comparison of line with line, but in the picture of the two articles as entireties. It is the tout ensemble test. Coming from these generalities to the case before us the design here is of a lamp shade. Beauty of design in a lamp shade in its appeal to purchasers, would have undoubted commercial value. That for which the designer is striving is not merely ornamentation but beauty. However elusive and indefinable it may be there is such a thing as beauty. It may lie in form or shape. Lamp shades may be truncated cone-shaped; bell-shaped or pear-shaped. In as old an art as that of lamp shade making, we may be sure that no one could be given an exclusive right to any one of these shapes. The lines of contour may be straight or curved. We have endeavored to point out how the slightest change in line may make a great change in the picture produced by the design. The introduction of ruffles has evidently appealed to the designers of lamp shades. The addition of one or more of them may make the greatest difference in the appearance of the picture. Applying the tout ensemble test, infringement is present only if there is a deceptive resemblance in the designs. In one respect Design Patents are like the patents for special makes of anything with which Courts are sometimes called upon to deal. The Claims must be so narrowly construed that the slightest departure from them will avoid infringement. So it is with Design Patents. Nothing but an almost slavish copy can be found to be an infringement. The test is deceptive resemblance.

We cannot find infringement in the lamp shades of the defendant. Our difficulty in finding infringement is this. We have found validity in the patent in suit. Almost every variety of lamp shade had been made before that of the plaintiff, but we are able to distinguish the latter from the shades of the prior art, and thus find novelty and originality in the design of the

patent. The differences are however very slight.

It is a well settled doctrine of the Patent law that what is an infringement of an issued patent would, if prior, be an anticipation.· The converse is equally true. The plain and abiding truth from finding which we cannot escape is that the resemblance of the shades of the defendant to those of the patent, is no greater than that between the patented shade of the plaintiff and some of the shades of the prior art. Having found validity because of unlikeness we are, by the same token, constrained to find non-infringement.